UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| TAMEIKA LEWIS, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | FILE NO. _____ |
| v. ) | |
| ) | |
| ST. FRANCIS HEALTH, LLC ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Tameika Lewis ("Plaintiff" or "Lewis") respectfully files this Complaint against Defendant St. Francis Health, LLC ("St. Francis").

## INTRODUCTION

1. This is a case of illegal racial harassment, race discrimination, and retaliation in the workplace. Lewis, a black woman, was employed by Defendant at St. Francis Health, LLC, at its Urgent Care facility in Columbus, Georgia. Throughout her employment there, Lewis endured racially hostile, discriminatory, and stereotyping conduct from several of Defendant's white employees and her white supervisors. Her supervisors also made many derogatory comments referring to her age. Instead of ensuring that Lewis was able to work in an environment free from discrimination, Lewis's supervisors blamed her for the situation. Lewis reported the racially discriminatory working environment to her manager, to the Ethics Hotline, and to Human Resources. Despite its knowledge of the discriminatory behaviors and Lewis's complaints, Defendant did not take reasonable measures to investigate and stop the racially hostile conduct.

Instead, Defendant disciplined Lewis by putting her on Academic Probation. Then, it summarily terminated her.

2. Lewis brings claims under 42 U.S.C. § 1981 for racially hostile working environment, race discrimination, and retaliation.

3. Lewis also brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, for a racially hostile working environment, race discrimination, and retaliation.

4. Lewis also brings claims under the Age Discrimination in Employment Act ("ADEA"), for age discrimination and retaliation.

## JURISDICTION, VENUE, AND PARTIES

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper because all the parties reside and/or conduct business within the Middle District of Georgia, and the unlawful employment practices giving rise to Plaintiff's claims occurred in this judicial district.

7. Lewis resides in the Middle District of Georgia and is a citizen of Georgia. She was Defendant's employee at all times material to the Complaint.

8. St. Francis Health, LLC is a for-profit corporation incorporated in Delaware. St. Francis Health, LLC's principal place of business is in Brentwood, Tennessee. St. Francis Health, LLC transacts business in Columbus, Georgia.

9. At all times material to this Complaint, and as pled in detail below, St. Francis Health, LLC was Lewis's employer, and Lewis was St. Francis Health, LLC's employee, within the meaning of Title VII and the ADEA.

10.     St. Francis Health, LLC may be served with process via its registered agent: Neal Callahan, 111 12th Street, Suite 300, Columbus, GA 31902.

## ADMINISTRATIVE PROCEEDINGS

11.     Lewis filed an EEOC Charge on October 25, 2019 alleging race discrimination, age discrimination, and retaliation, and she made allegations before the EEOC which placed Defendant on fair notice of the Title VII and ADEA claims Lewis brings in this lawsuit.

12.     Lewis filed her charge within 180 days of the last act of race and age discrimination to which she was subjected and within 180 days of the relevant retaliatory actions she alleges here.

13.     Lewis timely filed her EEOC charge.

14.     The EEOC issued a Notice of Right to Sue dated May 8, 2020.

15.     Lewis and St. Francis Urgent Care, LLC entered into a tolling agreement that extended the statute of limitations to September 23, 2020.

16.     Lewis filed this lawsuit within the tolling period.

17.     Lewis's Title VII and ADEA claims are timely filed.

18.     Lewis has exhausted the administrative prerequisites to her filing her Title VII and ADEA claims.

## FACTUAL ALLEGATIONS

19.     Lewis is a black woman over the age of 40.

20.     Lewis began her employment with St. Francis in January 2019.

21.     On or around May 22, 2019, Lewis needed to obtain transfer paperwork for Dr. Wong.

22. When Lewis asked the receptionist, Melody, a young white woman, for the transfer paperwork, Melody told her that she was not her "fucking keeper" and said that she should have her own "fucking papers."

23. Lewis called the Office Manager, Brandy Martin, a young white woman, to inform her of Melody's behavior.

24. The next day, May 23, 2019, Terry Jordan, a white woman, met with Lewis.

25. Jordan told Lewis that she didn't have time to talk with her about the incident with Melody.

26. Instead, Jordan wrote Lewis up for an unrelated incident that occurred in April 2019. In providing Lewis with the writeup, Jordan told Lewis that she had unpleasant facial expressions.

27. During their meeting, Jordan also told Lewis that Lewis was "old enough to have tough skin."

28. Though Lewis said she did not agree with the write-up, Jordan stated that Lewis had to sign it or she would no longer have a job with St. Francis.

29. The next day, May 24, 2019, Martin told Lewis that she should punch out early so that Debbie, a white female from a different clinic, could have more hours.

30. Lewis was paid by the hour, so this directive cost Lewis pay and reallocated that pay to the white female employee.

31. When Lewis protested, Martin told her to "quit complaining like a baby" and suggested that she use PTO.

32. When Debbie did not show up for shifts, no one at St. Francis alerted Lewis that she could come in and work.

33. Martin repeated age-related comments whenever Lewis complained, including on or around June 5, 2019 where she told Lewis that she was "old enough to have a tough skin" when she witnessed Lewis being yelled at by a coworker. The coworker, a white male, was never addressed.

34. On or around June 9, 2019, Jordan held a staff meeting where she asked if anyone had anything to say.

35. Lewis stated that the African American employees at St. Francis did not have a voice in their employment and often felt disrespected and belittled.

36. Jordan told Lewis to take her complaints to Martin, but Lewis said that Martin did not treat every employee equally.

37. Jordan then told Lewis to contact Ethics and asked, "Does anyone else have a *valid* point?"

38. That night, Lewis contacted the St. Francis Ethics Hotline and complained of race discrimination, age discrimination, and a hostile work environment.

39. Lewis was told that an investigation would open and that her complaint would remain confidential.

40. Lewis requested to be relocated within the health network.

41. On or around June 16, 2019, Erica Powell, a Human Resources Representative, had Lewis come to St. Francis to discuss Lewis's claims.

42. Lewis told Powell that she was the oldest African American employee and that she and other African American employees were being treated poorly. Lewis reiterated her request to be relocated and expressed that she was losing sleep because she was afraid to go to work.

43. On or around June 26, 2019, Powell ended her investigation.

44. The investigation culminated with Martin and Jordan placing Lewis on "Academic Probation" for 90 days, allegedly for use of a cell phone.

45. Many other employees who also used their cell phone were not placed on any sort of "Academic Probation."

46. When Lewis pointed this out, she was told that the other employees could have their phones, but she was not allowed to have her phone.

47. Powell drew up a Performance Improvement Plan for Lewis and forced her to sign it by threatening her job once again.

48. On or around July 8, 2019, Lewis was approached by a coworker, Donna Reese, a white woman. Reese told Lewis that Lewis was a "fucking snitch" and said that everyone at St. Francis Urgent Care knew that Lewis called the Ethics hotline. Reese stated that St. Francis was going to fire Lewis's "black ass."

49. Lewis tried to contact Powell to let her know about Reese's comments, but she could not reach Powell.

50. On or around July 19, 2019, a police officer came to the facility. The police officer met with Dr. Parker in an exam room.

51. Lewis was told by Simone, a Physician's Assistant, to go into the exam room to get a boot. Despite Lewis's protests, Simone demanded that Lewis go into the room to get the boot.

52. Though Dr. Parker was upset, Simone told Lewis that she would not be in trouble.

53. On or around July 30, 2019, Martin asked Lewis to meet with her and Powell.

54. During the meeting, Powell told Lewis that they were firing her because she violated her "Academic Probation" by engaging in Insubordination when she walked in the exam room to get the boot.

55. Powell also restated that Lewis had unpleasant facial expressions.

56. Lewis told Martin and Powell about Reese's comments, but they did not seem to care.

57. Since St. Francis terminated Lewis for insubordination, Lewis was unable to obtain subsequent employment in the health industry.

58. Defendant, including its managerial and human resources officials involved in the above-pled facts, knew throughout Lewis's employment that it was a violation of Lewis's federal rights for Defendant to subject her to a racially hostile working environment, discriminate against Lewis based on her race, or terminate her because of her race.

59. Defendant, including its managerial and human resources officials involved in the above-pled facts, knew throughout Lewis's employment that it was a violation of Lewis's federal rights for Defendant to retaliate against Lewis for reporting or opposing race discrimination or a racially hostile working environment.

60. Defendant, including its managerial and human resources officials involved in the above-pled facts, acted with malice toward Lewis.

61. Additionally and in the alternative, Defendant, including its managerial and human resources officials involved in the above-pled facts, acted with reckless disregard for Lewis's federally protected rights.

## COUNT I
## INTENTIONAL RACE DISCRIMINATION (RACIALLY HOSTILE WORKING ENVIRONMENT) IN VIOLATION OF 42 U.S.C. § 1981

62. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

63. At all times material to this Complaint, Lewis and Defendant were parties to a contract of employment under which, *inter alia*, Lewis worked for Defendant and Defendant compensated Lewis for her work.

64. Lewis performed her contractual obligations by, *inter alia*, working for Defendant.

65. Under 42 U.S.C. § 1981, it is unlawful for Defendant to discriminate against Lewis based on her race in the making or enforcement of contracts with her.

66. 42 U.S.C. § 1981's prohibition on race discrimination in the making or enforcing of contracts applies to Lewis's employment contract with Defendant.

67. The above-pled facts constitute race discrimination in violation of 42 U.S.C. § 1981 because Defendant discriminated against Lewis throughout her employment by subjecting her to a racially hostile working environment. Defendant is liable for the racially hostile working environment because, *inter alia*, it knew or reasonably should have known of the racially hostile conduct by Lewis's coworkers and supervisors, did not take reasonable measures to investigate or remediate the racially hostile conduct, and, instead, terminated Lewis for reporting it.

68. As a result of Defendant's intentionally discriminatory actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation and other indignities.

69. Pursuant to Section 1981, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

70. Defendant acted with malice toward Lewis, authorizing an award of punitive damages against Defendant.

71. Additionally, and in the alternative, Defendant acted with reckless disregard for Lewis's federally protected rights, authorizing an award of punitive damages against Defendant.

## **COUNT II**
## **INTENTIONAL RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

72. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

73. At all times material to this Complaint, Lewis and Defendant were parties to a contract of employment under which, *inter alia*, Lewis worked for Defendant and Defendant compensated Lewis for her work.

74. Lewis performed her contractual obligations by, *inter alia*, working for Defendant.

75. Under 42 U.S.C. § 1981, it is unlawful for Defendant to discriminate against Lewis based on her race in the making or enforcement of contracts with her.

76. 42 U.S.C. § 1981's prohibition on race discrimination in the making or enforcing of contracts applies to Lewis's employment contract with Defendant.

77. The above-pled facts constitute race discrimination in violation of 42 U.S.C. § 1981 because Defendant discriminated against Lewis by, *inter alia*, terminating her because of her race.

78. As a result of Defendant's intentionally discriminatory actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation and other indignities.

79. Pursuant to Section 1981, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

80. Defendant acted with malice toward Lewis, authorizing an award of punitive damages against Defendant.

81. Additionally, and in the alternative, Defendant acted with reckless disregard for Lewis's federally protected rights, authorizing an award of punitive damages against Defendant.

## COUNT III
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

82. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

83. At all times material to this Complaint, Lewis and Defendant were parties to a contract of employment under which, *inter alia*, Lewis provided work for Defendant and Defendant compensated Lewis for her work.

84. Lewis performed her contractual obligations by, *inter alia*, working for Defendant.

85. Under 42 U.S.C. § 1981, it is unlawful for Defendant to discriminate against Lewis based on her race in the making or enforcement of contracts with her.

86. 42 U.S.C. § 1981's prohibition on race discrimination in the making or enforcing of contracts applies to Lewis's employment contract with Defendant.

87. Under 42 U.S.C. § 1981, it is illegal for Defendant to retaliate against Lewis for reporting or opposing race discrimination, including a racially hostile working environment.

88. Lewis engaged in protected activity under 42 U.S.C. § 1981 by reporting and opposing race discrimination and a racially hostile working environment in communications to Defendant's managerial and human resources officials and to Defendant's Ethics Hotline.

89. Defendant retaliated against Lewis for her protected conduct, in violation of 42 U.S.C. § 1981's prohibition against such retaliation by, *inter alia*, disciplining and terminating Lewis because of her protected reports of, and opposition to, race discrimination and racial hostility.

90. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

91. Pursuant to Section 1981, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under Section 1981.

92. Defendant acted with malice toward Lewis, authorizing an award of punitive damages against Defendant.

93. Additionally, and in the alternative, Defendant acted with reckless disregard for Lewis's federally protected rights, authorizing an award of punitive damages against Defendant.

## COUNT IV
## INTENTIONAL RACE DISCRIMINATION (RACIALLY HOSTILE WORKING ENVIRONMENT) IN VIOLATION OF TITLE VII

94. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

95. At all times material to this Complaint, Lewis was Defendant's employee, and Defendant was Lewis's employer, within the meaning of Title VII.

96. Defendants violated Plaintiff's rights under Title VII by, among other things: subjecting her to a racially hostile work environment, failing to take reasonable preventative or remedial measures to address such environment despite actual and/or constructive notice of same and, instead, disciplining and terminating Lewis because of her complaints about the discrimination.

97. Defendant undertook the above-pled conduct because of Lewis's race (Black), in violation of Title VII's anti-discrimination provisions.

98. As a direct and proximate result of Defendant's conduct, Lewis has suffered damages, including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

99. Defendant acted with malice toward Lewis, authorizing an award of punitive damages against Defendant.

100. Additionally, and in the alternative, Defendant acted with reckless disregard for Lewis's federally protected rights, authorizing an award of punitive damages against Defendant.

## COUNT V
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

101. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

102. At all times material to this Complaint, Lewis was Defendant's employee, and Defendant was Lewis's employer, within the meaning of Title VII.

103. Defendant violated Plaintiff's rights under Title VII by, among other things: disciplining and terminating Lewis because of her race (Black).

104. Defendant undertook the above-pled conduct because of Lewis's race in violation of Title VII's anti-discrimination provisions.

105. As a direct and proximate result of Defendant's conduct, Lewis has suffered damages, including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

106. Defendant acted with malice toward Lewis, authorizing an award of punitive damages against Defendant.

107. Additionally, and in the alternative, Defendant acted with reckless disregard for Lewis's federally protected rights, authorizing an award of punitive damages against Defendant.

## COUNT VI
## RETALIATION IN VIOLATION OF TITLE VII

108. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

109. At all times material to this Complaint, Lewis was Defendant's employee, and Defendant was Lewis's employer, within the meaning of Title VII.

110. Defendant violated Plaintiff's rights under Title VII by, among other things: disciplining and terminating Lewis because she reported, opposed, and participated in an investigation of, race discrimination and a racially hostile working environment, in violation of Title VII's anti-retaliation provisions.

111. As a direct and proximate result of Defendant's conduct, Lewis has suffered damages, including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

112. Defendant acted with malice toward Lewis, authorizing an award of punitive damages against Defendant.

113. Additionally, and in the alternative, Defendant acted with reckless disregard for Lewis's federally protected rights, authorizing an award of punitive damages against Defendant.

## COUNT VII
## AGE DISCRIMINATION IN VIOLAITON OF THE ADEA

114. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

115. At all times material to this Complaint, Lewis was Defendant's employee, and Defendant was Lewis's employer, within the meaning of the ADEA.

116. Defendant discriminated against Lewis because of her age, in violation of the ADEA.

117. Defendant's discriminatory actions have caused Lewis damages including, but not limited to, lost wages and benefits.

118. Defendant's discriminatory acts were willful within the meaning of the ADEA, and Lewis is therefore entitled to liquidated damages under 29 U.S.C. § 626(b).

## COUNT VIII
## RETALIATION IN VIOLATION OF THE ADEA

119. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

120. At all times material to this Complaint, Lewis was Defendant's employee, and Defendant was Lewis's employer, within the meaning of the ADEA.

121. Defendant violated the ADEA by, among other things: disciplining and terminating Lewis because she reported, opposed, and participated in an investigation of, age discrimination in violation of the ADEA's anti-retaliation provisions.

122. Defendant's discriminatory actions have caused Lewis damages including, but not limited to, lost wages and benefits.

123. Defendant's discriminatory acts were willful within the meaning of the ADEA, and Lewis is therefore entitled to liquidated damages under 29 U.S.C. § 626(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a) A declaration that Defendant violated Plaintiff's rights under the federal statutes listed above;

(b) A permanent injunction against Defendant enjoining Defendant from further violations of the federal statutes listed above;

(c) Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) Liquidated damages as provided by the ADEA;

(e) Reinstatement to Plaintiff's former position with Defendant, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(f) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(g)     Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for their conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(h)     Reasonable attorneys' fees and costs.

(i)     Other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted on this 23rd day of September 2020,

                                          *s/ Steven E. Wolfe*
                                          Steven E. Wolfe
                                          Georgia Bar No. 142441
                                          Marissa R. Torgerson
                                          Georgia Bar No. 848356

LEGARE, ATTWOOD & WOLFE, LLC
125 Clairemont Avenue, Suite 380
Decatur, GA  30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212
sewolfe@law-llc.com
mrtorgerson@law-llc.com
Counsel for Plaintiff